Laswell v. Seaton.

No. 23,059.

OTIS LASWELL et al., *Appellees*, v. G. M. SEATON et al., as the School Board of Joint Rural High-school District No. 3, Pottawatomie County, *Appellants*.

SYLLABUS BY THE COURT.

1. TEMPORARY INJUNCTION—*Granted Without Notice—Right of Appeal.* An appeal will lie from a temporary injunction granted without notice under section 262 of the civil code, without first applying to the court or judge to vacate or modify the order.

2. SAME—*Motion to Vacate—Right of Appeal Not Destroyed.* The right of appeal in such case is not destroyed by the filing of a motion to vacate which has not been presented to nor been passed upon by the judge or the court granting the order.

3. SAME. On the facts and circumstances in this case, the order granted is *held* to be a temporary injunction.

4. RURAL HIGH-SCHOOL DISTRICT BOARD—*Power Over Conduct of Schools and Levying of Taxes.* In an ordinary school district the patrons of the school at the annual meeting of the district determine what levy shall be made for school purposes, but a rural high-school district at its annual meeting has no power except to elect the rural high-school board, which determines at its annual meeting on the third Monday in April how the school shall be conducted, and makes the levy of taxes for school purposes.

5. SAME—*Erection of School Building—Board May Make Levy for Deficiency After Proceeds of Bonds are Exhausted.* Under sections 4 and 5 of chapter 284 of the Laws of 1917, the rural high-school board, in the erection of a school building, is not necessarily limited to the proceeds of bonds voted by the district for that purpose, and where it is found that a school building suitable and fit for the district cannot be erected for the amount of bonds voted and issued, the board may proceed to erect a building and meet the deficiency by a levy of taxes made within the limits of the levy authorized by section 4 of chapter 284 of the Laws of 1917.

6. INJUNCTION—*Restraining Erection of High-school Building—Petition Fails to State Cause of Action.* On appeal from an order granting a temporary injunction restraining a rural high-school board from erecting a high-school building or levying any taxes for that purpose, *held,* that the petition fails to state a cause of action, and that it was error to grant the injunction.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed July 19, 1920. Reversed.

*Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the appellants.

*Maurice Murphy,* of St. Marys, and *A. E. Crane,* of Topeka, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The appeal is from an order granting a temporary injunction restraining the defendants as officers of joint rural high-school district No. 3, in Pottawatomie county, from erecting a school building.

Joint rural high-school district No. 3, which comprises four school districts in Pottawatomie county and three in Jackson county, was established at an election held in 1919. At the same election an issue of $25,000 of bonds was authorized for the purpose of contructing a high-school building in the town of Emmett in Pottawatomie county, and the bonds were issued and sold. The plaintiffs are residents, landowners and taxpayers of the district, and in their petition allege that, aside from the proceeds of the bonds, the defendant officers have no other funds; that $50,000 was the lowest bid for the erection of the building which could be obtained by the defendants; and that in November, 1919, defendants called a special election for authority to issue $19,000 additional bonds, which proposition was defeated at the election; that thereafter defendants, without any legal authority, were proceeding to erect a building "which, according to the plans and specifications," will cost not less than $75,000, and had hired labor, employed mechanics and purchased materials for the building; and that this unwarranted action of the defendants will occasion the levy of an illegal tax against the property of plaintiffs and other taxpayers. A temporary injunction was prayed for, restraining defendants from entering into any contract for the erection of the building, hiring any labor, purchasing any material, or collecting any taxes for that purpose until the final trial, and that the injunction be made permanent. The petition was verified by one of the plaintiffs. On the 25th of March, 1920, the judge of the district court granted a temporary injunction, which became effective upon the giving of a bond by plaintiffs in the sum of $1,000.

The answer alleged that defendants were proceeding to construct a building that would cost, fully equipped, not to exceed $50,000, and that the district was already indebted in a large sum for materials purchased, ordered and supplied, and that it would be impossible to erect a building suitable and fit for the needs of the school district at a less cost.

At the outset we are met with an objection to a hearing of the appeal, and plaintiffs ask that it be dismissed on the ground that defendants are attempting to appeal from an order granting a temporary injunction allowed without notice. While it is conceded that the civil code of 1909 dispenses with the necessity of taking or saving exceptions (*Kelley v. Schreiber,* 82 Kan. 403, 404, 108 Pac. 816; *Kroenert v. Sawyer,* 87 Kan. 374, 124 Pac. 418), it is insisted it is still necessary to make objections to a ruling before an appeal will lie, and that the code does not contemplate an appeal from an order granting a temporary injunction without notice, for the reason that the defendant, under section 262 of the code (Gen. Stat. 1915, § 7160), at any time before trial may, upon notice, apply to the court or judge to vacate or modify the injunction. In this connection it is urged that defendants gave notice and filed a motion to set aside the injunction, that the motion was set for hearing, but was afterwards continued. Since it has been neither presented to the court nor decided, it is urged that the granting of the temporary injunction is not a final order. We are unable to see any merit in these contentions. The injunction was granted before the defendants had answered, and in such a case the statute allows a temporary injunction to be granted without notice. The code, section 565 (Gen. Stat. 1915, § 7469), authorizes an appeal from an order granting an injunction, and the fact that a motion filed by defendants to set it aside has not yet been considered or passed upon by the trial court does not destroy defendants' right to appeal from the granting of the injunction.

Although the plaintiffs speak in their brief of the order as a "temporary injunction," there is a suggestion that because the order enjoined the defendants "until the further order of the court," it was not, in fact, a temporary injunction, but a mere restraining order, and therefore not a final order. The plaintiffs asked and obtained a temporary injunction, which

has been in force since some time in March. It has apparently been treated by all the parties and the court as a temporary injunction; and up to this time has effectually restrained the defendants from proceeding further with the erection of the school building. " 'Temporary injunction' and 'restraining order' are often used synonymously. . . . The restraint which the order purports to impose, and not the name given to it, determines its true name and character." (*The State v. Johnston,* 78 Kan. 615, 97 Pac. 790. See, also, *City of Emporia v. Telephone Co.,* 90 Kan. 118, 133 Pac. 858.) We regard the order in this case as a temporary injunction and, for the reasons stated, the motion to dismiss is overruled.

In their brief, plaintiffs cite several cases involving the powers of the board of directors of a school district, which we do not regard as in point. In the ordinary school district the resident taxpayers determine at the annual school meeting what levy shall be made for school purposes. But at the annual meeting of a rural high-school district the patrons of the school have no power except to elect a board. Section 4 of chapter 284 of the Laws of 1917 fixes the time for the annual school meeting for the election of officers of rural high-school districts on the day preceding the annual meeting of school districts. In the same section it is provided that the annual meeting of the high-school board shall be held on the following Monday, at which time the board is required to make the necessary levy for taxes, not to exceed four mills on the dollar on the valuation of all property in the high-school district, to pay teachers, to create a fund to retire any indebtedness and interest on the same, to purchase a site, to build, hire, or purchase a schoolhouse, and to pay incidental expenses of the high school. It is at the annual meeting of the high-school board on the third Monday of April that the board determines how the school shall be conducted and makes the tax levy. Rural high-school district No. 3 was not organized until July, 1919, and the annual meeting for that year was not held.

In section 5 the board is given authority to issue the bonds of the district for the purchase of a site and for the construction of a building or buildings for school purposes; provided, that no bonds shall be issued unless authorized by an election.

The petition in this case alleged that the board had no funds

in its hands, except the proceeds of the bonds issued, which were insufficient to meet the cost of the building contemplated by the board; but the suit was filed and the temporary injunction was granted on March 25, 1920, only a few days prior to the time fixed for the annual meeting of the board to make a levy of taxes for the purposes determined to be necessary.

One theory upon which the petition is drawn appears to be that in the erection of a school building the rural high-school board is limited to the proceeds of the bonds voted by the district, but this is a mistaken view. In *Wright v. Board of Education*, 106 Kan. 469, 188 Pac. 439, the court considered the authority of a board of education, after being authorized at an election to issue $50,000 in bonds for the purpose of erecting a building for an industrial-training school, which was found to be insufficient, to make up the deficiency by the levy of a two-mill tax authorized by another statute for the construction and repair of school buildings. A somewhat similar situation arose in that case as in this. It was discovered after the bonds had been voted that, owing to the increased cost of labor and material, the proceeds of the bonds (even when supplemented by a donation of $10,000), would not be sufficient to pay for the building called for by the plans. In that case the board at first adopted a resolution to submit to the voters a proposition to issue additional bonds, but afterwards rescinded their action and decided to raise the additional amount by taxation. This action was under the authority of the statute authorizing an annual levy of that amount "for the purchase of sites and for the construction and repairing of school buildings." Notwithstanding the fact that the statute which authorized the voting of bonds for the erection of buildings contained a provision that the board must complete the building within the estimated cost and should in no case create a deficiency in connection therewith, it was held that this did not prevent the expenditure for that purpose of such sum in excess of the amount of bonds voted as might be raised by the levy of a two-mill tax under the general statute.

In the present case we may assume that after the bonds were voted the school board discovered that, owing to the increased cost of labor and materials, it would be impossible to erect a building suitable and fit for the needs of the district and keep

within the amount of the bonds and the original estimate. In the Leavenworth case, *Wright v. Board of Education,* supra, it was said:

"The legislature can hardly have intended that where, as in the present case, it is found impossible to erect a suitable building for the amount of the original estimate, the board must nevertheless, despite any obstacles or changed conditions, proceed to put up such an edifice as the bonds already voted would pay for. . . . If a board has on hand or can raise by the tax permitted in the current year, a sufficient fund to pay for such a building as is found to be necessary, there can be no occasion for issuing bonds. And if a part of the amount necessary to pay for the construction of a new building is available from a fund on hand or from the proceeds of current taxes, there can be no occasion for issuing bonds beyond the sum needed to make up the difference. We interpret the statutes as permitting the board to incur such expense in the erection of a school building as may be met from the proceeds of the bonds and the levy of a two-mill tax." (p. 473.)

In this case the petition shows that the defendants, who were authorized to provide a school building, found that the $25,000 in bonds voted for the purpose of building a schoolhouse, was insufficient, and that they contemplated the levy of a tax to meet the deficiency. It is not contended that the building the board was proceeding to erect is unnecessary; it seems to be conceded that a school building suitable for the district cannot be erected for the amount of the bonds or for a sum less than that which the board proposed to expend. It is not alleged that the amount that might be levied under the provisions of the statute for the very purpose of erecting a school building would not be sufficient to meet the deficiency in the amount of the bonds. There is no provision in the statute that a rural high-school building shall not cost to exceed $25,000; nor is there any provision that deprives the board of the power to contract for a building in excess of the amount of bonds issued. We see no reason why the board might not raise part of the funds necessary to erect a building by the issuance of bonds and levy a tax for the remainder of the cost, so long as they keep within the limits of the levy authorized by the statute. The duty of providing a suitable building for the high school is imposed upon the board, and not upon the district, and there is nothing alleged in the petition to indicate bad faith upon the part of the board. We interpret the provisions of section 4 of chapter 284 of the Laws of 1917 as conferring au-

thority upon the district board to levy taxes to be used in the erection of a school building and authorizing them, if they find it necessary, to issue bonds for that purpose, provided the proposition be submitted to the voters at an election. There is nothing in the statute to prevent the board, in our opinion, from making a levy of taxes to be used in whole or in part for the erection of a school building. As suggested in defendants' brief, we think that if a proposition for the issuance of bonds were defeated at an election, it would be the duty of the board, under section 4 of the act, to make the necessary levy for taxes in order "to purchase a site, to build, hire, or purchase a schoolhouse," provided they had not acquired the site "by donation" as authorized under section 5.

The petition was subject to demurrer on the ground that it states no cause of action, and it was error to grant the temporary injunction. The cause is reversed and remanded with directions to dissolve the injunction.